IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAY 0 2 2002

Michael N. Milby
Clerk of Court

| | |
|---|---|
| ACCUTEL OF TEXAS, INC., <br> BUY-TEL COMMUNICATIONS, INC., <br> DIAMOND TELCO, INC., <br> MAX-TEL COMMUNICATIONS, INC., <br> QUICK-TEL COMMUNICATIONS, INC. <br> R TEX COMMUNICATIONS GROUP INC., <br> ROSEBUD COTTON COMPANY, <br> ROSEBUD TELEPHONE, LLC, and <br> TIN CAN COMMUNICATIONS CO., LLC, <br><br> PLAINTIFFS, <br><br> VS. <br><br> SOUTHWESTERN <br> BELL TELEPHONE, L.P. <br><br> DEFENDANT. | CIVIL ACTION NO. B-02-054 |

**SOUTHWESTERN BELL TELEPHONE, L.P.'S
RESPONSE TO PLAINTIFFS' MOTION FOR REMAND**

Southwestern Bell Telephone, L.P. ("SWBT") files this response in opposition to plaintiffs' ("AccuTel") motion for remand. This case was properly removed to this Court under 28 U.S.C. § 1441(b) because AccuTel's claims rest on federal law, a federally mandated contract, and cannot be adjudicated without resolving substantial questions of federal law under the controlling federal statute. As explained below in Section II, the United States District Court for the Northern District of Texas has recently held in a virtually identical case that such claims are necessarily governed by federal law.

I.

AccuTel competes with SWBT in the local telephone service market. It does so by reselling SWBT telecommunications services to AccuTel's end-user customers. As a

part of its business, AccuTel uses electronic ordering provided by SWBT to establish new local phone service to its customers. This lawsuit is about the rate SWBT charges AccuTel for that service.

As the parties agree (Plaintiffs' Motion for Remand ¶ 3) in 1997 the Public Utility Commission of Texas ("PUCT") set certain rates, as described below, and approved them as a part of SWBT's 1999 Interconnection Agreement with AccuTel. AccuTel now argues that SWBT should be charging it an unbundled network element ("UNE") price for the use of SWBT's electronic ordering service, and not the higher resale price SWBT charges for ordering new phone service electronically. If SWBT has been charging the correct rate all along, then AccuTel has no damages and cannot maintain causes of action for deceptive trade practices, unjust enrichment, or any other state law cause of action.

As explained in detail in SWBT's motion to dismiss, which is already submitted to this Court, federal law governs the interpretation of interconnection agreements and the selection of the correct price. Just as it strenuously tried to avoid alleging this crucial fact in its state court petition, AccuTel now omits it from its motion for remand, and continues to argue that this case does not hinge on federal law. AccuTel tries to divert the Court by arguing that the *causes of action* in its petition are creatures of state law. But as explained below, the way AccuTel chooses to dress up its allegations is irrelevant. AccuTel cannot avoid a proper removal by pretending that federal law does not control.

The precise question of whether SWBT is charging AccuTel the correct rate is currently being adjudicated in proceedings before the PUCT. The PUCT must resolve the question by interpreting the Federal Telecommunications Act ("FTA")[1] as it relates to

---

[1] Pub. 1, No. 104-104, 100 Stat. 56 (1996) (codified as amended in scattered sections of 47 U.S.C.) (hereinafter "FTA").

AccuTel's Interconnection Agreement with SWBT. Specifically, the PUCT must decide, under §§ 251(b)-(c) and 252 of the FTA, the precise question AccuTel is asking this Court to decide -- whether SWBT should be charging the UNE rate or the discounted resale rate.

## II.

In a recent case with facts virtually the same as the one before this Court, another reseller of SWBT services, Millennium One Communications, Inc. ("Millennium"), sued SWBT in Texas state court seeking a refund of alleged overcharges for telecommunications services. SWBT removed the case to federal court for the Northern District of Texas, Dallas Division (Civil Action No. 3:02-CV-0527-L). In a decision filed on April 16, 2002 denying Millennium's request for a temporary restraining order, a copy of which is attached at Tab A, the Court summarized the facts in this way:

> The dispute arose because Plaintiff originally purchased services from Defendant by forwarding a service order to Defendant. Defendant's employees would then manually process the orders. This procedure changed when Defendant implemented a system that allowed Plaintiff to electronically place orders for new and restored services. The electronic service was called the Easy Access Sales Environment ("EASE"). When Plaintiff used EASE, Defendant's employees were no longer required to manually process orders, as Plaintiff was able to process the orders through EASE.

(Order at 2).

The issue in Millennium, as here, was whether the UNE or the discounted resale rate should apply to plaintiff's use of SWBT's electronic ordering service. Judge Lindsay made it clear that Millennium's lawsuit was governed by federal law, despite Millennium's protest to the contrary. The Court explained: "The parties' Agreement is

an interconnection agreement.... The [FTA] § 252 governs this court's jurisdiction to review disputes that arise in relation to such agreements" (Order at 4). The Court explained that it could not resolve the parties' dispute other than by interpreting the interconnection agreement under federal law. (Order at 5).

Citing *Southwestern Bell Tel. Co. v. Public Util. Comm.*, 208 F.3d 475, 479, (5th Cir. 2000), the Court reiterated the Fifth Circuit's holding that, under § 252, the PUCT makes decisions on the proper interpretation of interconnection agreements, which decisions are then subject to the jurisdiction of the federal courts for review. (Order at 4). The Court flatly rejected Millennium's argument that Millennium was not asking the Court to interpret the agreement, but simply requesting that the Court order SWBT to charge the "correct" rate. AccuTel is making the identical erroneous argument here, suggesting that the "correct rate" has already been established, when, in fact, that determination is the very subject of the ongoing PUCT proceedings.

### III.

Federal law establishes a detailed set of procedures governing suits to challenge state commission determinations concerning telecommunications services. Such cases can be brought only after appropriate administrative remedies have been exhausted. *See* 47 U.S.C. § 252.[2] (These provisions form the basis for SWBT's pending Motion to Dismiss). Federal law also dictates that such an action can be brought only in federal court, and only at the conclusion of agency action. *Southwestern Bell Tel. Co. v. Public Util. Comm.*, 208 F.3d 475, 479, (5th Cir. 2000). Such a federal court case, if brought by

---

[2] Section 252(e)(6) of the FTA provides: "In any case in which a State commission makes a determination under this section [47 U.S.C. §252], any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the [interconnection] agreement ... meets the requirements of section 251 of this title and this section [47 U.S.C. § 252]."

the customer, challenges the agency determination of whether the carrier, here SWBT, has violated its interconnection agreement with its customer. In the present case, if the PUCT rules for SWBT, AccuTel would have to argue in federal court that the PUCT made an erroneous determination, under §§ 251(c) and 252 of the FTA, that SWBT is charging AccuTel the correct rate. By claiming that SWBT has overcharged AccuTel under the parties' Interconnection Agreement, AccuTel has implicated the federal statutory scheme under §252, making federal court the only permitted judicial tribunal.

AccuTel argues that its case concerns only rates charged in the past, and is therefore not subject to federal court appellate jurisdiction under §252. As explained above, however, this is misleading and incorrect. The issue being addressed right now at the PUCT pursuant to federal law is *not* the review of a rate previously set. The PUCT is deciding the appropriate rate, under the parties' Interconnection Agreement, to charge AccuTel for using electronic ordering services from SWBT when SWBT processes resale orders.[3] Whether that rate is a UNE rate or the discounted resale rate is governed by the FTA.

### IV.

AccuTel's motion for remand rests on two legal propositions: (1) a defendant bears the burden of proof in a remand determination; and (2) AccuTel does not allege a federal question. SWBT agrees that it bears the burden of proof. As for the claim that AccuTel does not allege a federal question, AccuTel is wrong on the facts, as already shown, and on the law as explained below.

---

[3] Although AccuTel suggests otherwise, there has never been a decision by the PUCT, much less an appeal to federal court, determining which rates applies. The Mega-Arbitration AccuTel references did not resolve the issue, but simply set the two rates that are now the subject of the PUCT arbitration between AccuTel and SWBT.

5

While a plaintiff is the master of its own complaint, plaintiff's right to characterize its lawsuit is hardly unlimited. *See Franchise Tax Ed. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 22-23 (1983). As the Court in *Franchise Tax* emphasized, a plaintiff cannot simply omit to plead federal questions that are necessary to recovery in the action. *Id.*; *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 366 (5th Cir. 1995); *Burda v. M. Ecker Co.*, 954 F.2d 434, 438 (7th Cir. 1992). If resolution of the complaint implicates a substantial question of federal law, the removal is proper. *Franchise Tax, 463 U.S. at 28; Carpenter,* 44 F.3d at 366. Therefore, regardless of a plaintiff's protestations that only state law causes of action have been pled, the court must review the complaint to determine whether it addresses a substantial question of federal law. *Id.* If a federal question is present, and plaintiff has done nothing more than "artfully plead" the complaint, removal is proper. *Id.*

The artful pleading exception to the well-pleaded complaint rule is designed to preclude a plaintiff from pleading what is essentially a federal claim on state court grounds in order to avoid federal jurisdiction. As the Fifth Circuit explained in *Carpenter*, "in certain situations where the plaintiff necessarily has available no legitimate or viable state cause of action, but only a federal claim, he may not avoid removal by artfully casting his federal suit as one arising exclusively under state law." 44 F.3d at 366. The *Carpenter* Court elaborated: "In many contexts plaintiff's claim may be one that is exclusively governed by federal law, so that the plaintiff necessarily is stating a federal cause of action, whether he chooses to articulate it that way or not. If the only remedy available to plaintiff is federal, because of preemption or otherwise, and the state court necessarily must look to federal law in passing on the claim, the case is removable

regardless of what is in the pleading." *Id.* (citing 14A Wright & Miller Federal Practice and Procedure §3722 (2d ed. 1985)).

Of course, AccuTel is attempting to do just that. It has cloaked its federal claim under the guise of various state law causes of action to try to mask the federal question that lies beneath.[4] As explained above in Section III, however, federal law exclusively governs the resolution of AccuTel's claim. No amount of artful pleading can change that.

The cases AccuTel offers to support the position that its allegations do not raise a federal question actually support SWBT's removal, and not AccuTel's motion for remand. In *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804 (1986), the Supreme Court held that in a common law negligence case, no federal question was raised where the only potential federal nexus was a federal labeling statute that provided for no federal cause of action, and that created a presumption of negligence under state law. The Court held that, standing alone, this potential presumption under state negligence law would not support removal. *478 U.S. at 813-814.*

SWBT does not argue otherwise. The presumption of negligence in *Merrell* was not a core issue. It was tangential to the core issue of whether the defendant was negligent. *478 U.S. at 813.* The pricing issue in this case, of course, is anything but tangential. The determination of which rate applies is *the* core question, and §252(e)(6) mandates that the question be resolved in federal Court.

AccuTel's reliance on *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800 (1988) is also misplaced. Christianson was not a removal case. It was an antitrust

---

[4] The Fifth Circuit has determined that "[t] he court must evaluate a plaintiff's motive for her failure to plead a federal cause of action. If the court concludes that the plaintiff's failure to plead her federal claim was not in good faith, but rather was an attempt to conceal the fact that her claim was truly federal, the court will allow the removal". *Aaron v. National Union Fire Ins. Co. of Pittsburgh*, 876 F. 2d 1157, 1161.

7

case filed in federal district court. The issue in *Christianson* was whether, on appeal, the case belonged in the Court of Appeals for the Federal Circuit, or the Seventh Circuit. To decide that question, the Supreme Court examined whether the case truly arose under the federal antitrust laws, or was actually a patent law case over which the Federal Circuit has exclusive jurisdiction. Borrowing from removal jurisprudence, the Court held that the mere presence of patent law issues did not change the fact that the case arose under the antitrust laws:

> If "on the face of a well-pleaded complaint there are ... reasons completely unrelated to the provisions and purposes of [the patent laws] why the [plaintiff] may or may not be entitled to the relief it seeks," *Franchise Tax Board,* 463 U.S., at 26, 103 S.Ct., at 2855 (footnote omitted), then the claim does not "arise under" those laws.[additional citations omitted].
>
> \*\*\*
>
> Framed in these terms, our resolution of the jurisdictional issue in this case is straightforward. Petitioners' antitrust count can readily be understood to encompass both a monopolization claim under § 2 of the Sherman Act and a group-boycott claim under § 1. The patent-law issue, while arguably necessary to at least one theory under each claim, is not necessary to the overall success of either claim.

486 U.S. at 810.

Here, of course, the are no "reasons completely unrelated to the provisions and purposes of [the Federal Telecommunications Act] why [AccuTel] may or may not be entitled to the relief it seeks." 486 U.S. at 810. On the contrary, the FTA issues are "necessary to the overall success of [AccuTel's] claim," *Id.*; because all of the relief it seeks is not just fundamentally related to, but fully governed by, the provisions and purposes of that federal statute.

## CONCLUSION

For these reasons, SWBT respectfully requests that AccuTel's Motion for Remand be denied.

By: *[signature]*
Geoffrey Amsel
Attorney in Charge
Texas State Bar No. 01161570
Southern District of Texas Bar No. 22716
1010 N. St. Mary's Street, Room 1403
San Antonio, Texas 78215
Telephone: (210) 886-4805
Telecopier: (210) 222-7194

Eduardo Roberto Rodriguez
Texas State Bar No. 17144000
Southern District of Texas Bar No. 1944
Mitchell C. Chaney
Texas State Bar No. 04107500
Southern District of Texas Bar No. 1918
R. Patrick Rodriguez
Texas State Bar No. 24002861
Southern District of Texas Bar No. 22949
Rodriguez, Colvin & Chaney, L.L.P.
1201 East Van Buren Street
Post Office Box 2155
Brownsville, Texas 78522
Telephone: (956) 542-7441
Telecopier: (956) 541-2170

ATTORNEY FOR DEFENDANT,
SOUTHWESTERN BELL TELEPHONE, L.P.

MIDWEST:9353.1

# CERTIFICATE OF SERVICE

On this 2nd day of May, 2002, a true and correct copy of foregoing **Defendant Southwestern Bell Telephone, L.P.'s Response to Plaintiffs' Motion for Remand** was served by certified mail, return receipt requested upon the following attorney(s) of record:

Mark Foster
Christopher Malish
Foster & Malish, LLP
1403 West Sixth Street
Austin, Texas 78703

Gilberto Hiñojosa
Magallanes, Hiñojosa & Mancias
1713 Boca Chica Blvd.
Brownsville, Texas 78703

_____
Geoffrey Amsel

**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**
APR 16 2002
CLERK, U.S. DISTRICT COURT
By_____ Deputy

| | | |
|---|---|---|
| MILLENNIUM ONE COMMUNICATIONS, INC., | § § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:02-CV-0527-L |
| SOUTHWESTERN BELL, TELEPHONE, L.P., | § § § | |
| Defendant. | § | |

## ORDER

Before the court are Plaintiff's Motion to Extend Temporary Restraining Order and Motion for Temporary Injunction ("Motion to Extend"), filed March 25, 2002; and Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction ("Motion for Temporary Restraining Order"), filed April 2, 2002. Plaintiff's Motion to Extend and Motion for Temporary Restraining Order are **denied** without prejudice, because the matter is not ripe, and the court lacks subject matter jurisdiction.

### I. Facts and Procedural Background

Plaintiff Millennium One Communications, Inc. ("Plaintiff") and Defendant Southwestern Bell Telephone, L.P. ("Defendant") entered into a Wholesale Inside Wire Plan Resale Agreement ("Agreement") in October 1999. The Agreement allows Plaintiff to purchase telecommunications services from Defendant, and Plaintiff then resells those services to its "end-users." The parties do not define the term "end-users," but end-users apparently are residential or commercial customers of telephone companies. Plaintiff purchases the telecommunications services from Defendant at a rate that is less than the rate Defendant sells the services directly to its end-users.

Order - Page 1

The parties dispute whether Plaintiff is being overcharged for certain services. The services in dispute are new service connections and restored services. The dispute arose because Plaintiff originally purchased the services from Defendant by forwarding a service order to Defendant. Defendant's employees would then manually process the orders. This procedure changed when Defendant implemented a system that allowed Plaintiff to electronically place orders for new and restored services. The electronic service was called the Easy Access Sales Environment ("EASE"). When Plaintiff used EASE, Defendant's employees were no longer required to manually process orders, as Plaintiff was able to process the orders through EASE.

Plaintiff contends that a tariff that controls rates for telecommunication services, and administrative decisions from the Federal Communications Commission ("FCC") and the Texas Public Utility Commission ("PUC"), led it to believe that it should pay less for new or restored services processed through EASE, than those manually processed by Defendant's employees. Plaintiff specifically contends that Defendant is required to charge it based on the actual cost of providing the new and restored order processing to Plaintiff through EASE, which is $2.58 per order according to Plaintiff.[1] Defendant contends that this rate does not apply to Plaintiff because the Agreement requires Plaintiff to purchase the new and restored services as "resale basis" services and, according to Defendant, such services cost approximately $14.96 per order. Defendant therefore has continued to charge Plaintiff the same rate for orders processed through EASE as it does for orders manually processed by Defendant's employees.

---

[1] The practice of charging Defendant based on the actual cost of services is the TELRIC pricing methodology. See Hearing Transcript ("Tr.") at 40.

Order - Page 2

Plaintiff has not paid approximately $40,000 to $50,000 in alleged overcharges that have resulted from this dispute. Defendant therefore threatens to terminate the Agreement if Plaintiff does not pay the charges or put them in an escrow account until the dispute is resolved. The parties' Agreement contains a provision that requires Plaintiff to pay any disputed billings into an escrow account. *See* Appendix to Memorandum of Law of Defendant Southwestern Bell Telephone, L.P. in Opposition to Plaintiff's Motion to Extend Temporary Restraining Order and Motion for Temporary Injunction ("App.") at 32.

Plaintiff sought a temporary restraining order in a Texas state court to prevent Defendant from terminating the Agreement, because Plaintiff allegedly will be put out of business if it is terminated. On March 11, 2002, a master recommended that a temporary restraining order be issued in favor of Plaintiff, and recommended that Plaintiff be directed to file a $5000 bond. *See* App. at 92. A state district judge signed an order on March 11, 2002, which stated that the "clerk ... shall issue a temporary restraining order in conformity with the law and the terms of this order upon the filing by Plaintiff of the bond hereinafter set. This order shall not be effective until Plaintiff deposits with the Clerk, a bond in the amount of $5000 in conformity with the law." *See* state court order, dated March 11, 2002, attached to Plaintiff's Motion to Extend.

Defendant removed the state court action to this court on March 13, 2002. Two days after Defendant removed the action, Plaintiff paid the $5000 bond to the state court. *See* App. at 95-96. Plaintiff presently moves this court to extend the state court temporary restraining order, assuming one issued, or to issue a new temporary restraining order to prevent Defendant from terminating the Agreement. The court will not evaluate the merits of whether any state temporary restraining order should be extended, or whether a temporary restraining order should issue from this court, because the court lacks jurisdiction to hear this action.

## II. Jurisdiction

The parties' Agreement is an interconnection agreement. *See* App. at 3. The Federal Telecommunications Act of 1996 (the "Act"), 47 U.S.C. § 252, governs this court's jurisdiction to review disputes that arise in relation to such agreements. The Act provides that "[i]n any case in which a State Commission [here the PUC] makes a determination under this section, any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement . . . meets the requirements of section 251 of this title and this section." 47 U.S.C. § 252(e)(6). The Fifth Circuit has construed this provision to mean that the PUC has "the authority to interpret and enforce the provisions of agreements . . . ." *Southwestern Bell Tel. Co., v. Public Utility Comm'n*, 208 F.3d 475, 479 (5th Cir. 2000). "[D]istrict courts have jurisdiction to review such interpretation and enforcement decisions of the [PUC]." *Id.* at 480.

Defendant contends that its dispute with Plaintiff relates to the interpretation of their Agreement, but "Plaintiff seeks to totally bypass the [PUC and] have this court interpret the Agreement and decide what the appropriate charge for service connections and restorals should be . . . ." Memorandum of Law of Defendant Southwestern Bell Telephone, L.P. in Opposition to Plaintiff's Motion to Extend Temporary Restraining Order and Motion for Temporary Injunction ("Defendant's Memorandum") at 7. Defendant therefore contends that Plaintiff "ignores the careful balance between state and federal jurisdiction that Congress crafted in the [Federal Telecommunications Act]." *Id.*

Plaintiff responds to these contentions by asserting that it "is not requesting that the [c]ourt interpret the Agreement. [It] is simply requesting that the [c]ourt enjoin [Defendant's] activities." Plaintiff's Memorandum in Support of its Motion for Preliminary Injunction, Motion to Extend Temporary Restraining Order and Temporary Injunction, and Reply to Defendant's Memorandum

Order - Page 4

in Opposition to Plaintiff's Motion to Extend Temporary Restraining Order and Temporary Injunction ("Plaintiff's Memorandum") at 4. The court does not agree with Plaintiff's contention that it is not asking the court to interpret the Agreement.

One of the prerequisites to issuance of a temporary restraining order is that Plaintiff must show a substantial likelihood of success on the merits. In order to make that finding, the court must necessarily interpret the Agreement, because the relationship between Plaintiff and Defendant is wholly governed by the Agreement. As a result, any dispute between the parties necessarily implicates the Agreement. The court cannot conceive of a basis for Plaintiff to complain that Defendant is charging excessive rates for new and restored services that does not necessitate interpretation of the Agreement. If the court attempted to resolve this matter, it would begin by deciding whether or to what extent the Agreement prohibits the arguably excessive fees charged by Defendant. Accordingly, to resolve this matter, the court would be required to interpret and apply various provisions of the Agreement. This court acts as a reviewing or appellate court of PUC decisions, and if it is to have jurisdiction, the PUC must make a determination concerning the Interconnection Agreement at issue in this case. *See* 47 U.S.C. § 252(e)(6). No such determination has been made by the PUC. Since the PUC has not considered the interpretation of the Agreement, this matter is not ripe, and the court is without jurisdiction.

Plaintiff raises three additional challenges to the PUC's original jurisdiction over this matter. First, Plaintiff contends that the PUC rules "do not preclude [Plaintiff] from seeking injunctive relief in the courts in this situation." Plaintiff's Memorandum at 4. Plaintiff misses the mark with this contention, because the court's jurisdiction is not dictated or determined by the rules of the PUC. Its jurisdiction is found in 47 U.S.C. § 252, as interpreted by the Fifth Circuit, and the statute is construed to require the PUC to first interpret and enforce interconnection agreements. Federal

Order - Page 5

district courts are to *review* the PUC's decisions, and thus sit as appellate courts. Accordingly, even if the PUC's rules do not preclude Plaintiff's attempt to invoke the court's jurisdiction, the court is constrained by the jurisdictional limitations of 47 U.S.C. § 252, as interpreted by the Fifth Circuit.

Plaintiff also contends that the PUC's "rules are inadequate to prevent the harm complained of by [Plaintiff]." Plaintiff's Memorandum at 4. This allegedly is because the rules leave Plaintiff "without any legal protection for up to four days [and] [d]uring this interim period, [Defendant] could terminate [Plaintiff's] local exchange services without any legal consequences." *Id.* Even if the court accepted that PUC procedures may not afford Plaintiff relief as quickly as it would like, the court still does not have jurisdiction over this matter. The court cannot identify any Fifth Circuit authority that permits it to depart from the relevant jurisdictional limitations simply because a party is not satisfied with the procedures adopted by the PUC, and Plaintiff has not provided the court with any authority to this effect. Accordingly, the court follows the Fifth Circuit's interpretation of 47 U.S.C. § 252, and limits its role in disputes of this kind to that of a reviewing court.

Plaintiff finally contends that the PUC "cannot grant ... monetary damages to [Plaintiff]. Under an action [pursuant to the applicable law related to the PUC, Plaintiff] can simply seek prospective relief." Tr. at 14. Plaintiff offers no legal authority to support this contention, and Defendant challenges it by stating that "Plaintiff is saying that the [PUC] has no authority to do anything other than issue prospective relief. Our experience is that that's not the case, that if they file a dispute with the [PUC], [it] would look at the entire issue." *Id.* at 18.

Plaintiff misstates the extent of the PUC's remedial powers, because section 23.326(h) of the PUC's rules states that a PUC arbitrator:

> shall ... have authority to award remedies or relief deemed necessary by the arbitrator to resolve a dispute subject to the procedures established in this subchapter. The authority to award remedies or relief includes, *but*

Order - Page 6

> *is not limited to*, the award of prejudgment interest; specific performance of any obligation created in or found by the arbitrator to be intended under the interconnection agreement subject to the dispute, *issuance of an injunction*, or imposition of sanctions for abuse or frustration of the dispute resolution process . . . except the arbitrator does not have authority to award punitive or consequential damages.

Public Utility Commission of Texas Rules and Laws § 22.326(h)(emphasis added). This rule appears to give the PUC arbitrator remedial powers that are sufficiently broad to address Plaintiff's desired remedies. Plaintiff's contention that the PUC could only afford prospective relief therefore is incorrect. Moreover, even if the PUC's remedial powers were limited, the court does not find that this alters the jurisdictional limitations placed on its ability to adjudicate this action. The PUC still is the primary body authorized to hear the parties' dispute. Since the interpretation of this Agreement has not been presented to the PUC, the court finds that it is without jurisdiction to hear the parties' dispute. Consequently, as the court has no jurisdiction, it has no authority to decide Plaintiff's Motion to Extend Temporary Restraining Order and Motion for Temporary Injunction and Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction. The motions therefore are denied.

### III. Conclusion

For the reasons stated herein, this matter is not ripe, and the court lacks jurisdiction to hear this action. This action therefore is **dismissed without prejudice.** Accordingly, Plaintiff's Motion to Extend Temporary Restraining Order and Motion for Temporary Injunction and Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction are denied without prejudice. Given that this action is not a dismissal on the merits, each party shall bear its own costs.

It is so ordered this 16th day of April, 2002.

*Sam A. Lindsay*
Sam A. Lindsay
United States District Judge