IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAY 0 7 2002

Michael N. Milby
Clerk of Court

| | |
|---|---|
| ACCUTEL OF TEXAS, INC., <br> BUY-TEL COMMUNICATIONS, INC., <br> DIAMOND TELCO, INC., <br> MAX-TEL COMMUNICATIONS, INC., <br> QUICK-TEL COMMUNICATIONS, INC. <br> R TEX COMMUNICATIONS GROUP INC., <br> ROSEBUD COTTON COMPANY, <br> ROSEBUD TELEPHONE, LLC, and <br> TIN CAN COMMUNICATIONS CO., LLC, <br><br> PLAINTIFFS, <br><br> VS. <br><br> SOUTHWESTERN <br> BELL TELEPHONE, L.P. <br><br> DEFENDANT. | CIVIL ACTION NO. B-02-054 |

## SOUTHWESTERN BELL TELEPHONE, L.P.'S
## REPLY IN FURTHER SUPPORT OF MOTION TO DISMISS

Southwestern Bell Telephone, L.P. ("SWBT") submits this reply in further support of its motion to dismiss under Fed R Civ. P 12(b).

### I. STATE AGENCY ROLE

AccuTel is correct that the Public Utility Commission of Texas ("PUCT") set certain rates in 1997, and later approved them as a part of SWBT's Interconnection Agreement and Resale Agreement with AccuTel. But the claim that this somehow makes the current PUCT proceedings irrelevant, is belied by AccuTel's own conduct. It was AccuTel who invoked the PUCT arbitration under § 252 of the FTA. It was AccuTel who asked the PUCT to decide, under §§ 251(b)-(c) and 252, whether SWBT is charging AccuTel at the correct rate when AccuTel orders new phone service for its customers using electronic ordering. (See PUCT Docket Sheet, Item 1, Ex. A to SWBT's Motion to Dismiss).

Because it properly invoked the mandatory administrative procedures under the FTA to interpret a dispute over its contracts with SWBT, AccuTel can hardly argue now that its case is not subject to the very PUCT proceedings it requested.[1] As AccuTel is well aware, the PUCT proceedings are essential to its lawsuit: if SWBT is charging the correct rate, then AccuTel has no damages. If AccuTel has no damages, it cannot maintain causes of action under the Deceptive Trade Practices Act (DTPA), for unjust enrichment, or any other state law cause of action. The controlling question will not be resolved until the losing party before the PUCT has an opportunity to appeal the PUCT's decision to the appropriate federal court specified in § 252.

## II. INTERPRETATION OF INTERCONNECTION AGREEMENT REQUIRED

AccuTel's claim that its lawsuit does not require interpretation of the parties' Interconnection and Resale Agreements has been rejected by the United States District Court for the Northern District of Texas, Dallas Division, in *Millennium One Communications, Inc. v. Southwestern Bell Telephone, L.P.* (Civil Action No. 3:02-CV-0527-L) (Tab A). Millennium filed the case in state court and SWBT removed it. Just like AccuTel, Millennium claimed that it was being overcharged for using SWBT's electronic ordering services, and that the proper rate had already been set by the PUCT, making further PUCT proceedings unnecessary.

In a decision filed on April 16, 2002, Judge Lindsay flatly rejected this argument. The Court held that Millennium's lawsuit was governed by federal law, and that it belonged before the PUCT: "The [FTA] § 252 governs this court's jurisdiction to review disputes that arise in relation to such agreements" (Order at 4). The Court explained that it could not resolve the

---

[1] AccuTel's argument concerning the scope of the arbitration clauses in the parties' interconnection agreements misses the point. The PUCT arbitration requested here by AccuTel was mandated by § 252 of the FTA; not the private arbitration clauses in the interconnection agreements. SWBT's reference to those clauses is strictly to show that if AccuTel's complaint were a simple billing dispute, it would still be an arbitrable claim, albeit in a different forum.

2

MIDWEST:9390.1

parties' dispute other than by interpreting the interconnection agreement under federal law. (Order at 5).

Citing *Southwestern Bell Tel. Co. v. Public Util. Comm.*, 208 F.3d 475, 479, (5th Cir. 2000), the Court reiterated the Fifth Circuit's holding that, under § 252, the PUCT makes decisions on the proper interpretation of interconnection agreements, which decisions are only thereafter subject to review in the appropriate Federal District Court. (Order at 4). Here, because the PUCT sits in Austin, the appeal would lie in the Western District of Texas.

### III. RIPENESS/ EXHAUSTION OF ADMINISTRATIVE REMEDIES

AccuTel's response to SWBT's exhaustion of administrative remedies and ripeness arguments is simply to bootstrap their position that the PUCT lacks jurisdiction. As explained above, however, this is simply false. Since, under § 252, the case must proceed before the PUCT, and then on appeal to the federal courts, the parties' administrative remedies are not exhausted.

### IV. PRIMARY JURISDICTION

The notion that this Court should hear AccuTel's claims simultaneously with the § 252 process makes no sense, either in practical terms or under the doctrine of primary jurisdiction. AccuTel's response is simply to repeat its familiar position that this lawsuit merely alleges state law causes of action, and therefore the PUCT cannot grant AccuTel the relief it allegedly seeks a refund of "overpayments" based on "a rate already set." This is the identical argument rebuffed by the Court in *Millennium*.[2]

---

[2] The PUCT has never explicitly ruled, or been asked to rule, on whether the *existing* Interconnection Agreement and Resale Agreement require SWBT to use UNE pricing for the resale order types listed in the original petition. Because this has not occurred, the primary jurisdiction doctrine would counsel in favor of having the PUCT decide this question in the first instance, even after the current § 252 proceedings are completed.

3

MIDWEST:9390.1

Further, the suggestion that the primary jurisdiction inquiry begins and ends with whether the court can grant all of the requested relief ignores the body of case law already cited in SWBT's moving brief, which requires a careful consideration of agency expertise, consistency of interpretation, and the traditional areas of judicial competence. Indeed, the Fifth Circuit has flatly rejected the argument that inability to grant all requested relief bars application of the primary jurisdiction doctrine. *Penny v. Southwestern Bell Tel. Co.*, 906 F.2d 183, 186-187 (5th Cir. 1990) (trial court can reach out and touch [the PUCT's] expertise and uniformity and then use the PUC[T]'s determination as a basis for determining whether and what types of damages are appropriate in a particular case.)[3]

## V. SCOPE OF RELIEF

Finally, AccuTel's suggestion that the PUCT can grant only prospective relief has also been squarely rejected. The Fifth Circuit has held that "the Act's grant to the state commissions of plenary authority to approve or disapprove these interconnection agreements necessarily

---

[3] In *Penny*, plaintiff brought a DTPA claim contesting the rates that SWBT had charged. While agreeing that the PUCT did not have authority to award all the requested relief (*Id.* at 185-86), the court still found for SWBT on the primary jurisdiction defense.

> The fact that the PUC does not have exclusive jurisdiction over the Pennys' rate discrimination claim does not mean that it has no role to play in the adjudication of that claim. *The PUC has some obvious expertise in the area of determining whether rates have been applied discriminatorily.* Of perhaps even greater importance is the fact that *the PUC can provide more uniformity in the adjudication of that issue than can the number of different courts in which the claims may be brought.* Under the doctrine of primary jurisdiction, *a trial court can reach out and touch that expertise and uniformity and then use the PUC's determination as a basis for determining whether and what types of damages are appropriate in a particular case*. We find that pragmatic mechanism appropriate in this case.

*Id.* at 186-87 (emphases added). The court further found that "the PUC has the power to make incidental findings that are essential to the grant of relief," and that primary jurisdiction "is particularly appropriate because resolution of this case would be assisted by a primary determination from the PUC regarding the discrimination issue." *Id.* at 187, 188; *see also Northwinds Abatement, Inc. v. Employers Insurance of Wausau*, 69 F.3d 1304, 1311 (5th Cir. 1995) (following *Penny* and requiring district court to defer to state workers' compensation procedure "rather than to make these necessary determinations in the first instance"); *Golden v. Employers Insurance of Wausau*, 981 F. Supp. 467, 475 (S.D. Tex. 1997) (Kent, J.) (following *Northwinds* and applying doctrine of primary jurisdiction, because the state agency "is most qualified to determine whether Defendant acted properly when it denied Plaintiff workers' compensation coverage").

4

carries with it the authority to interpret and enforce the provisions of agreements that state commissions have approved." *Southwestern Bell Tel. Co. v. Public Utility Comm'n of Texas*, 208 F.3d 475, 479-80 (5th Cir. 2000) (emphasis added). The court also found that the FCC "plainly expects state commissions to decide intermediation and enforcement disputes that arise after the approval procedures are complete." *Id.* at 480. While this certainly does not resolve the issue of whether the PUCT can award monetary damages, it underlines the point that this Court should decline to hear this dispute before the PUCT has finished interpreting the parties' agreements and deciding the scope of its enforcement powers with respect to those agreements. At that time, the appropriate federal district court under § 252 can review the PUCT's decisions on both issues, and make determinations as to what further proceedings may be necessary.

## CONCLUSION

For these reasons, and those set forth in SWBT's moving brief, SWBT respectfully requests that its Motion to Dismiss be granted.

By: *[signature]*
Geoffrey Amsel
Attorney in Charge
Texas State Bar No. 01161570
Southern District of Texas Bar No. 22716
1010 N. St. Mary's Street, Room 1403
San Antonio, Texas 78215
Telephone: (210) 886-4805
Telecopier: (210) 222-7194

>Eduardo Roberto Rodriguez
>Texas State Bar No. 17144000
>Southern District of Texas Bar No. 1944
>Mitchell C. Chaney
>Texas State Bar No. 04107500
>Southern District of Texas Bar No. 1918
>R. Patrick Rodriguez
>Texas State Bar No. 24002861
>Southern District of Texas Bar No. 22949
>Rodriguez, Colvin & Chaney, L.L.P.
>1201 East Van Buren Street
>Post Office Box 2155
>Brownsville, Texas 78522
>Telephone: (956) 542-7441
>Telecopier: (956) 541-2170
>
>ATTORNEYS FOR DEFENDANT,
>SOUTHWESTERN BELL TELEPHONE, L.P.

## CERTIFICATE OF SERVICE

On this  7th  day of May, 2002, a true and correct copy of foregoing **Defendant Southwestern Bell Telephone, L.P.'s Reply in further Support of Motion to Dismiss** was served by certified mail, return receipt requested upon the following attorney(s) of record:

Mark Foster
Christopher Malish
Foster & Malish, LLP
1403 West Sixth Street
Austin, Texas 78703

Gilberto Hiñojosa
Magallanes, Hiñojosa & Mancias
1713 Boca Chica Blvd.
Brownsville, Texas 78703

*[signature]*
Geoffrey Amsel

A

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
APR 16 2002
CLERK, U.S. DISTRICT COURT
By _____ Deputy

| | | |
|---|---|---|
| MILLENNIUM ONE COMMUNICATIONS, INC., | § § § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:02-CV-0527-L |
| SOUTHWESTERN BELL TELEPHONE, L.P., | § § § | |
| Defendant. | § § | |

### ORDER

Before the court are Plaintiff's Motion to Extend Temporary Restraining Order and Motion for Temporary Injunction ("Motion to Extend"), filed March 25, 2002; and Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction ("Motion for Temporary Restraining Order"), filed April 2, 2002. Plaintiff's Motion to Extend and Motion for Temporary Restraining Order are **denied without prejudice**, because the matter is not ripe, and the court lacks subject matter jurisdiction.

### I. Facts and Procedural Background

Plaintiff Millennium One Communications, Inc. ("Plaintiff") and Defendant Southwestern Bell Telephone, L.P. ("Defendant") entered into a Wholesale Inside Wire Plan Resale Agreement ("Agreement") in October 1999. The Agreement allows Plaintiff to purchase telecommunications services from Defendant, and Plaintiff then resells those services to its "end-users." The parties do not define the term "end-users," but end-users apparently are residential or commercial customers of telephone companies. Plaintiff purchases the telecommunications services from Defendant at a rate that is less than the rate Defendant sells the services directly to its end-users.

Order - Page 1

The parties dispute whether Plaintiff is being overcharged for certain services. The services in dispute are new service connections and restored services. The dispute arose because Plaintiff originally purchased the services from Defendant by forwarding a service order to Defendant. Defendant's employees would then manually process the orders. This procedure changed when Defendant implemented a system that allowed Plaintiff to electronically place orders for new and restored services. The electronic service was called the Easy Access Sales Environment ("EASE"). When Plaintiff used EASE, Defendant's employees were no longer required to manually process orders, as Plaintiff was able to process the orders through EASE.

Plaintiff contends that a tariff that controls rates for telecommunication services, and administrative decisions from the Federal Communications Commission ("FCC") and the Texas Public Utility Commission ("PUC"), led it to believe that it should pay less for new or restored services processed through EASE, than those manually processed by Defendant's employees. Plaintiff specifically contends that Defendant is required to charge it based on the actual cost of providing the new and restored order processing to Plaintiff through EASE, which is $2.58 per order according to Plaintiff.[1] Defendant contends that this rate does not apply to Plaintiff because the Agreement requires Plaintiff to purchase the new and restored services as "resale basis" services and, according to Defendant, such services cost approximately $14.96 per order. Defendant therefore has continued to charge Plaintiff the same rate for orders processed through EASE as it does for orders manually processed by Defendant's employees.

---

[1] The practice of charging Defendant based on the actual cost of services is the TELRIC pricing methodology. See Hearing Transcript ("Tr.") at 40.

Order - Page 2

Plaintiff has not paid approximately $40,000 to $50,000 in alleged overcharges that have resulted from this dispute. Defendant therefore threatens to terminate the Agreement if Plaintiff does not pay the charges or put them in an escrow account until the dispute is resolved. The parties' Agreement contains a provision that requires Plaintiff to pay any disputed billings into an escrow account. *See* Appendix to Memorandum of Law of Defendant Southwestern Bell Telephone, L.P. in Opposition to Plaintiff's Motion to Extend Temporary Restraining Order and Motion for Temporary Injunction ("App.") at 32.

Plaintiff sought a temporary restraining order in a Texas state court to prevent Defendant from terminating the Agreement, because Plaintiff allegedly will be put out of business if it is terminated. On March 11, 2002, a master recommended that a temporary restraining order be issued in favor of Plaintiff, and recommended that Plaintiff be directed to file a $5000 bond. *See* App. at 92. A state district judge signed an order on March 11, 2002, which stated that the "clerk ... shall issue a temporary restraining order in conformity with the law and the terms of this order upon the filing by Plaintiff of the bond hereinafter set. This order shall not be effective until Plaintiff deposits with the Clerk, a bond in the amount of $5000 in conformity with the law." *See* state court order, dated March 11, 2002, attached to Plaintiff's Motion to Extend.

Defendant removed the state court action to this court on March 13, 2002. Two days after Defendant removed the action, Plaintiff paid the $5000 bond to the state court. *See* App. at 95-96. Plaintiff presently moves this court to extend the state court temporary restraining order, assuming one issued, or to issue a new temporary restraining order to prevent Defendant from terminating the Agreement. The court will not evaluate the merits of whether any state temporary restraining order should be extended, or whether a temporary restraining order should issue from this court, because the court lacks jurisdiction to hear this action.

Order - Page 3

## II. Jurisdiction

The parties' Agreement is an interconnection agreement. *See* App. at 3. The Federal Telecommunications Act of 1996 (the "Act"), 47 U.S.C. § 252, governs this court's jurisdiction to review disputes that arise in relation to such agreements. The Act provides that "[i]n any case in which a State Commission [here the PUC] makes a determination under this section, any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement . . . meets the requirements of section 251 of this title and this section." 47 U.S.C. § 252(e)(6). The Fifth Circuit has construed this provision to mean that the PUC has "the authority to interpret and enforce the provisions of agreements . . . ." *Southwestern Bell Tel. Co., v. Public Utility Comm'n*, 208 F.3d 475, 479 (5th Cir. 2000). "[D]istrict courts have jurisdiction to review such interpretation and enforcement decisions of the [PUC]." *Id.* at 480.

Defendant contends that its dispute with Plaintiff relates to the interpretation of their Agreement, but "Plaintiff seeks to totally bypass the [PUC and] have this court interpret the Agreement and decide what the appropriate charge for service connections and restorals should be . . . ." Memorandum of Law of Defendant Southwestern Bell Telephone, L.P. in Opposition to Plaintiff's Motion to Extend Temporary Restraining Order and Motion for Temporary Injunction ("Defendant's Memorandum") at 7. Defendant therefore contends that Plaintiff "ignores the careful balance between state and federal jurisdiction that Congress crafted in the [Federal Telecommunications Act]." *Id.*

Plaintiff responds to these contentions by asserting that it "is not requesting that the [c]ourt interpret the Agreement. [It] is simply requesting that the [c]ourt enjoin [Defendant's] activities." Plaintiff's Memorandum in Support of its Motion for Preliminary Injunction, Motion to Extend Temporary Restraining Order and Temporary Injunction, and Reply to Defendant's Memorandum

Order - Page 4

in Opposition to Plaintiff's Motion to Extend Temporary Restraining Order and Temporary Injunction ("Plaintiff's Memorandum") at 4. The court does not agree with Plaintiff's contention that it is not asking the court to interpret the Agreement.

One of the prerequisites to issuance of a temporary restraining order is that Plaintiff must show a substantial likelihood of success on the merits. In order to make that finding, the court must necessarily interpret the Agreement, because the relationship between Plaintiff and Defendant is wholly governed by the Agreement. As a result, any dispute between the parties necessarily implicates the Agreement. The court cannot conceive of a basis for Plaintiff to complain that Defendant is charging excessive rates for new and restored services that does not necessitate interpretation of the Agreement. If the court attempted to resolve this matter, it would begin by deciding whether or to what extent the Agreement prohibits the arguably excessive fees charged by Defendant. Accordingly, to resolve this matter, the court would be required to interpret and apply various provisions of the Agreement. This court acts as a reviewing or appellate court of PUC decisions, and if it is to have jurisdiction, the PUC must make a determination concerning the Interconnection Agreement at issue in this case. *See* 47 U.S.C. § 252(e)(6). No such determination has been made by the PUC. Since the PUC has not considered the interpretation of the Agreement, this matter is not ripe, and the court is without jurisdiction.

Plaintiff raises three additional challenges to the PUC's original jurisdiction over this matter. First, Plaintiff contends that the PUC rules "do not preclude [Plaintiff] from seeking injunctive relief in the courts in this situation." Plaintiff's Memorandum at 4. Plaintiff misses the mark with this contention, because the court's jurisdiction is not dictated or determined by the rules of the PUC. Its jurisdiction is found in 47 U.S.C. § 252, as interpreted by the Fifth Circuit, and the statute is construed to require the PUC to first interpret and enforce interconnection agreements. Federal

Order - Page 5

district courts are to *review* the PUC's decisions, and thus sit as appellate courts. Accordingly, even if the PUC's rules do not preclude Plaintiff's attempt to invoke the court's jurisdiction, the court is constrained by the jurisdictional limitations of 47 U.S.C. § 252, as interpreted by the Fifth Circuit.

Plaintiff also contends that the PUC's "rules are inadequate to prevent the harm complained of by [Plaintiff]." Plaintiff's Memorandum at 4. This allegedly is because the rules leave Plaintiff "without any legal protection for up to four days [and] [d]uring this interim period, [Defendant] could terminate [Plaintiff's] local exchange services without any legal consequences." *Id.* Even if the court accepted that PUC procedures may not afford Plaintiff relief as quickly as it would like, the court still does not have jurisdiction over this matter. The court cannot identify any Fifth Circuit authority that permits it to depart from the relevant jurisdictional limitations simply because a party is not satisfied with the procedures adopted by the PUC, and Plaintiff has not provided the court with any authority to this effect. Accordingly, the court follows the Fifth Circuit's interpretation of 47 U.S.C. § 252, and limits its role in disputes of this kind to that of a reviewing court.

Plaintiff finally contends that the PUC "cannot grant . . . monetary damages to [Plaintiff]. Under an action [pursuant to the applicable law related to the PUC, Plaintiff] can simply seek prospective relief." Tr. at 14. Plaintiff offers no legal authority to support this contention, and Defendant challenges it by stating that "Plaintiff is saying that the [PUC] has no authority to do anything other than issue prospective relief. Our experience is that that's not the case, that if they file a dispute with the [PUC], [it] would look at the entire issue." *Id.* at 18.

Plaintiff misstates the extent of the PUC's remedial powers, because section 23.326(h) of the PUC's rules states that a PUC arbitrator:

> shall . . . have authority to award remedies or relief deemed necessary by the arbitrator to resolve a dispute subject to the procedures established in this subchapter. The authority to award remedies or relief includes, *but*

Order - Page 6

> *is not limited to*, the award of prejudgment interest; specific performance of any obligation created in or found by the arbitrator to be intended under the interconnection agreement subject to the dispute, *issuance of an injunction*, or imposition of sanctions for abuse or frustration of the dispute resolution process . . . except the arbitrator does not have authority to award punitive or consequential damages.

Public Utility Commission of Texas Rules and Laws § 22.326(h)(emphasis added). This rule appears to give the PUC arbitrator remedial powers that are sufficiently broad to address Plaintiff's desired remedies. Plaintiff's contention that the PUC could only afford prospective relief therefore is incorrect. Moreover, even if the PUC's remedial powers were limited, the court does not find that this alters the jurisdictional limitations placed on its ability to adjudicate this action. The PUC still is the primary body authorized to hear the parties' dispute. Since the interpretation of this Agreement has not been presented to the PUC, the court finds that it is without jurisdiction to hear the parties' dispute. Consequently, as the court has no jurisdiction, it has no authority to decide Plaintiff's Motion to Extend Temporary Restraining Order and Motion for Temporary Injunction and Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction. The motions therefore are denied.

### III. Conclusion

For the reasons stated herein, this matter is not ripe, and the court lacks jurisdiction to hear this action. This action therefore is **dismissed** without prejudice. Accordingly, Plaintiff's Motion to Extend Temporary Restraining Order and Motion for Temporary Injunction and Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction are denied without prejudice. Given that this action is not a dismissal on the merits, each party shall bear its own costs.

It is so ordered this 16th day of April, 2002.

*Sam A. Lindsay*
Sam A. Lindsay
United States District Judge

Order - Page 8

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| ACCUTEL OF TEXAS, INC., <br> BUY-TEL COMMUNICATIONS, INC., <br> DIAMOND TELCO, INC., <br> MAX-TEL COMMUNICATIONS, INC., <br> QUICK-TEL COMMUNICATIONS, INC. <br> R TEX COMMUNICATIONS GROUP INC., <br> ROSEBUD COTTON COMPANY, <br> ROSEBUD TELEPHONE, LLC, and <br> TIN CAN COMMUNICATIONS CO., LLC, <br><br> PLAINTIFFS, <br><br> VS. <br><br> SOUTHWESTERN <br> BELL TELEPHONE, L.P. <br><br> DEFENDANT. | CIVIL ACTION NO. B-02-054 |

## **ORDER**

On this day Plaintiffs' Motion for Remand having been presented to the Court, and the Court, after having reviewed the pleadings and authorities cited being of the opinion that the motion is without merit, it is therefore hereby:

ORDERED, ADJUDGED and DECREED that Plaintiffs' Motion for Remand be, and the same is hereby in all things DENIED,

SO ORDERED this _____ day of _____, 2002.

_____
UNITED STATES DISTRICT JUDGE

## RODRIGUEZ, COLVIN & CHANEY, L.L.P.
### ATTORNEYS AT LAW
A REGISTERED LIMITED LIABILITY PARTNERSHIP

1201 EAST VAN BUREN
P. O. BOX 2155
BROWNSVILLE, TEXAS 78522
TELEPHONE (956) 542-7441
TELECOPIER (956) 541-2170
www.rcclaw.com

EDUARDO ROBERTO RODRIGUEZ
NORTON A. COLVIN, JR.
MITCHELL C. CHANEY
MARJORY C. BATSELL
JAIME A. SAENZ*
JOSEPH A. (TONY) RODRIGUEZ
ALISON D. KENNAMER

OF COUNSEL
BENJAMIN S. HARDY (1912-1993)
ORRIN W. JOHNSON
NEIL E. NORQUEST
CHRIS A. BRISACK
RAYMOND A. COWLEY‡

LAURA J. URBIS
LECIA L. CHANEY
R. PATRICK RODRIGUEZ
ROSAMARIA VILLAGÓMEZ-VELA
TERI L. DANISH

*BOARD CERTIFIED IN PERSONAL INJURY TRIAL LAW
TEXAS BOARD OF LEGAL SPECIALIZATION

‡BOARD CERTIFIED IN LABOR AND EMPLOYMENT LAW
TEXAS BOARD OF LEGAL SPECIALIZATION

May 7, 2002

United States District Court
Southern District of Texas
RECEIVED
MAY 07 2002
Michael N. Milby, Clerk of Court

Mr. Butch Barbosa
United States Deputy District Clerk
United States Courthouse
600 East Harrison Street
Brownsville, Texas 78520

*Via Hand Delivery*

Re: Civil Action No. B-02-054
Accutel of Texas, Inc., et al. v. Southwestern Bell Telephone, L.P.

Dear Mr. Barbosa:

Enclosed please find an original and one copy of the following:

*Southwestern Bell Telephone, L.P.'s Reply in Further Support of Motion to Dismiss*

which I would request that you file in the above cause. Please file stamp the extra copy and return same with the person filing said document for our file.

By copy hereof, I am serving all counsel of record with a copy of the above document.

Thank you for your assistance in this matter.

Very truly yours,

RODRIGUEZ, COLVIN & CHANEY, L.L.P.

R. Patrick Rodriguez

RPR:ie
Enclosures
cc: Mr. Christopher Malish
Foster & Malish, LLP
Attorneys at Law
1403 West Sixth Street
Austin, Texas 78703

Mr. Butch Barbosa
May 7, 2002
Page 2

      Gilberto Hinojosa
      Magallanes, Hinojosa & Mancias
      1713 Boca Chica
      Brownsville, Texas 78520

      Mr. Geoffrey Amsel
      1010 N. St. Mary's Street, Room 1403
      San Antonio, Texas 78215