United States District Court
Southern District of Texas
FILED

JUL 31 2002

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ACCUTEL OF TEXAS, INC., ET AL. | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. B-02-054 |
| | § | |
| SOUTHWESTERN BELL | § | |
| TELEPHONE, L.P. | § | |
|     Defendant. | § | |

**JOINT DISCOVERY/CASE MANAGEMENT PLAN**
**UNDER RULE 26(f)**
**FEDERAL RULES OF CIVIL PROCEDURE**

1. **State where and when the meeting of the parties required by Rule 26(f) was held and identify the counsel who attended each party.**

   The parties met by phone on July 25, 26, and 29, 2002.

2. **List the cases related to this one that are pending in any state or federal court with the case number and court.**

   Cause No. SA-02-CA-0571-EP in the United States District Court, Western District of Texas, San Antonio Division *Southwestern Bell Telephone, L.P. v. the Public Utility Commission of Texas, Rebecca Klein, in her official capacity as Chairperson of the Public Utility Commission of Texas, Brett Perlman, in his official capacity as a Commissioner of the Public Utility Commission of Texas, and AccuTel of Texas, Inc., d/b/a 1-800-4-A-PHONE.*

3. **Specify the allegation of federal jurisdiction.**

   SWBT alleges federal jurisdiction based on the Federal Telecommunications Act of 1996. According to SWBT:

   a. All of plaintiffs claims are based on the allegation that SWBT has not been charging the correct prices under its interconnection agreements with plaintiffs.

   b. All of those agreements were entered into and approved by the Texas PUC pursuant to federal law.

   c. Under the 1996 Act, the Texas PUC has primary jurisdiction over the interpretation

1

of interconnection agreements and its interpretation of those agreements raises questions of federal law. *See* 28 U.S.C. 1331. The 1996 Act expressly provides for review of the PUC's determinations in federal court. *See* 47 U.S.C. 252(e)(6).

4.  **Name the parties who disagree and the reasons.**

    All plaintiffs deny any basis for federal jurisdiction. Plaintiffs' claims of violations of the deceptive trade practices act, common-law unjust enrichment, and state anti-trust laws, are entirely Texas-law based. Just because the telecommunications industry is federally regulated does not make every case between telecommunications providers a federal case.

    The Texas PUC does not have primary jurisdiction over plaintiffs' claims; in fact, quite the contrary. The 1996 Act does not vest exclusive jurisdiction to the Texas PUC to determine disputes between ILECs and CLECs, and it is well settled in Texas law that the PUC does not have primary jurisdiction over a consumer's claim that a telephone utility violated the Texas Deceptive Trade Practices Act. *Southwestern Bell Telephone Company v. Nash,* 586 S.W.2d 647, 649-650 (Tex. App. – Austin, 1979).

5.  **List anticipated additional parties that should be included, when they can be added, and by whom they are wanted**

    Plaintiffs believe that additional parties should include all those CLECs who received the same or substantially the same treatment from SWBT as plaintiffs, as described in plaintiffs' original petition.

    SWBT believes that no additional parties should be added because no CLEC has ever obtained a determination from the Texas PUC that SWBT has not charged it the correct rate under its interconnection agreement for operations support systems functions. SWBT states further that it does not know what plaintiffs mean by "CLECs who received the same treatment from SWBT as plaintiffs, as described in plaintiffs' original petition."

6.  **List anticipated interventions.**

    Plaintiffs believe that if this case is not granted class action status, a source of intervenors might include all those CLECs who received the same treatment from SWBT as plaintiffs, as described in plaintiffs' original petition.

    SWBT contends that there are no additional parties to be added, because no CLEC has ever obtained a determination from the Texas PUC that SWBT has not charged it the correct rate under its interconnection agreement for operations support systems functions. SWBT states further that it does not know what plaintiffs mean by "CLECs who received the same treatment from SWBT as plaintiffs, as described in plaintiffs' original petition."

7. **Describe class-action issues.**

**Plaintiffs' position:**

Plaintiffs are all "Competitive Local Exchange Carriers", or "CLECs" – businesses attempting to compete with Southwestern Bell in a local service area which Southwestern Bell currently dominates. Each is authorized to provide competitive local telephone service in Texas by the Public Utility Commission of Texas ("PUC"). The plaintiffs bring this action on their own behalf and on behalf of all persons similarly situated. The class which plaintiffs seek to represent is composed of all those Competitive Local Exchange Carriers ("CLECs") with less than $25 million in assets which have resold services provided by Southwestern Bell in Texas since 1997 and have paid Southwestern Bell more than the rates set out by the PUC for operation support systems ("OSS") functions, as set out in greater detail in Plaintiffs Original Petition.

In addition to the plaintiffs named above, there are currently about 460 other similarly situated CLECs currently authorized by the PUC to resell telephone service in Texas. However, not all of the entities currently certificated have resold Southwestern Bell services, and there may be entities now de-certified which have resold Southwestern Bell services since 1997.

Common questions of law or fact affecting the class include:

a. whether the rates charged by Southwestern Bell were higher than the rates set out by the PUC for operation support systems ("OSS") functions;

b. whether those overcharges were made deceptive practices as enumerated under the DTPA;

c. whether those overcharges were unconscionable under the DTPA;

d. whether those overcharges were made knowingly under the DTPA; and

e. and whether those overcharges were part of a widespread and systematic attempt to acquire or maintain an illegal monopoly.

The claims of the movants are typical of the claims of the rest of the class in that Southwestern Bell is believed to have charged all plaintiffs and potential plaintiffs approximately the same amounts for the services in question.

**SWBT's position:**

SWBT contends, without limiting its defenses to class certification, that there are no class action issues because the case should be dismissed on substantive grounds well before any

3

class issues would need to be addressed. In any event, SWBT contends that the named plaintiffs are not appropriate representatives of any purported class, because their claims are not typical and because they cannot adequately represent any purported class.

SWBT, the incumbent local exchange carrier ("ILEC") in much of Texas, has separately negotiated and entered into interconnection agreements with each of the plaintiffs in this action, as well as with every other CLEC operating in the areas of Texas where SWBT is the ILEC. None of those CLECs has ever obtained a determination from the Texas PUC that the rates SWBT has charged for the operations support systems functions at issue here are contrary to the terms of such CLEC's interconnection agreement. SWBT also denies that class certification is appropriate because individual issues predominate, including:

a. the meaning of the relevant terms of the particular interconnection agreement between SWBT and each of the purported class members, to the extent that those agreements are not identical;

b. whether the rates that SWBT charged each of the purported class members for the operations support system functions at issue here are contrary to the terms of each of the individual interconnection agreements;

c. the knowledge that each of the purported class members had of SWBT's interpretation of the terms of its particular interconnection agreement at the time it entered into that agreement, to the extent the terms of that agreement are ambiguous; and

d. the knowledge that each of the purported class members had of the prices that SWBT actually charged under its particular interconnection agreement, to the extent that causes of action depend upon a lack of knowledge of those practices.

For these reasons, among others, the claims of the movants are not typical of the purported class as a whole.

8. **State whether each party represents that it has made the initial disclosures required by Rule 26(a). If not, describe the arrangements that have been made to complete the disclosures.**

Neither party has made yet disclosures, but anticipate that they can do so on or before September 12, 2002.

SWBT contends that, under the 1996 Act, the development of a record with respect to whether the rates SWBT has charged each of the named plaintiffs and purported class members under SWBT's separate interconnection agreement with each of those CLECs is properly the subject of a complaint proceeding before the Texas PUC. SWBT has filed a

motion to dismiss on the ground that the Texas PUC has primary jurisdiction over this central question in plaintiffs complaint. To the extent this Court denies SWBT's motion to dismiss, however, SWBT's responses regarding discovery are set forth below.

9. **Describe the proposed agreed discovery plan, including:**

   a. **Responses to all the matters raised in Rule 26(f).**

   The parties have met and conferred on a discovery plan as required. Plaintiff expects to have these materials to defendant by September 12, 2002.

   b. **When and to whom the plaintiff anticipates it may send interrogatories.**

   Plaintiffs have already sent and anticipates sending more interrogatories to SWBT by August 15.

   c. **When and to whom the defendant anticipates it may send interrogatories.**

   SWBT anticipates sending interrogatories to all named plaintiffs on or before August 30, 2002.

   d. **Of whom and by when the plaintiff anticipates taking oral depositions.**

   Plaintiffs expect to depose SWBT as an entity on specific issues between September and January, 2003.

   e. **Of whom and by when the defendant anticipates taking oral depositions.**

   SWBT anticipates taking the oral depositions of all named plaintiffs by the end of January, 2003.

   f. **When the plaintiff (or the party with the burden of proof on an issue) will be able to designate experts and provide the reports required by Rule 26(a)(2)(B) and when the opposing party will be able to designate responsive experts and provide their reports.**

   Plaintiffs expect to be able to designate experts and provide reports by October 12, 2002.

   SWBT expects to be able to designate responsive experts and provide their reports within 30 days of the depositions of plaintiffs' experts.

5

g. **List expert depositions the plaintiff (or the party with the burden of proof on an issue) anticipates taking and their anticipated completion date. See Rule 26(a)(2)(b) (expert report).**

This will depend on an analysis of the experts identified by SWBT and their reports. Plaintiffs' rough estimate under the circumstances would be 3-7 expert depositions taken between September 2002 and January, 2003.

h. **List expert depositions the opposing party anticipates taking and their anticipated completion date. See Rule 26(a)(2)(b) (expert report).**

SWBT cannot anticipate how many experts plaintiffs will designate, but anticipates that depositions of such experts could be completed by February, 2002.

10. **If the parties are not agreed on a part of the discovery plan, describe the separate views and proposals of each party.**

Any areas of disagreement are set forth above.

11. **Specify the discovery beyond the initial disclosures that has been undertaken to date.**

None, other than informal discovery.

12. **State the date the planned discovery can reasonably be completed.**

February 12, 2003.

13. **Describe the possibilities for a prompt settlement or resolution of the case that were discussed in your Rule 26(f) meeting.**

The parties agreed that a prompt settlement was not possible, but agreed that formal mediation would be helpful following the substantial completion of discovery.

14. **Describe what each party has done or agreed to do to bring about a prompt resolution.**

As indicated above, the parties agreed that formal mediation would be helpful following the substantial completion of discovery.

15. **From the attorney's discussion with the client, state the alternative dispute resolution techniques that are reasonably suitable and state when such a technique may be effectively used in this case.**

Plaintiffs generally prefer mediation for alternative dispute resolution and would be open to same after the initial rounds of discovery are complete.

SWBT also agrees to mediation once discovery is substantially complete

16. **Magistrate judges may now hear jury and non-jury trials. Indicate the parties' joint position on a trial before a magistrate judge.**

The parties oppose a trial before a magistrate.

17. **State whether a jury demand has been made and if it was made on time.**

Plaintiffs timely made a jury request.

18. **Specify the number of hours it will take to present the evidence in this case.**

*THE PARTIES* ~~Plaintiffs'~~ initial estimate is that it will take about 40 hours to present the evidence in this case.

19. **List pending motions that could be ruled on at the initial pretrial and scheduling conference.**

Plaintiffs' motion to remand.
Defendant's motion to dismiss.

20. **List other motions pending.**

Plaintiffs' motion to have this cause certified as a class action.
The intervention of BasicPhone, Inc.
*THESE HAVE NOT BEEN "SUBMITTED" — Δ HAS NOT HAD OPP. TO RESPOND YET.*

21. **Indicate other matters peculiar to this case, including discovery, that deserve the special attention of the court at the conference.**

22. **List the names, bar numbers, addresses, and telephone numbers of all counsel.**

This information is contained in the signature blocks, below.

7

Respectfully submitted,

By: /s/ Christopher Malish

Christopher Malish
State Bar No. 00791164
Mark Foster
State Bar No. 07293850

Foster & Malish, L.L.P.
1403 West Sixth Street
Austin, Texas 78703
(512) 476-8591/(512) 477-8657/fax

Gilberto Hinojosa
Magallanes, Hinojosa & Mancias
1713 Boca Chica Blvd.
Brownsville, Texas 78520
(956) 544-6571
(956) 544-4290

ATTORNEYS FOR PLAINTIFFS

By:_____
Javier Aguilar
State Bar No. 00936300
Southern District Bar No. 3429
Geoffrey Amsel
Attorney in Charge
State Bar No. 01161570
Southern District Bar No. 22716
Southwestern Bell Telephone, L.P.
1010 N. St. Mary's, Room 1400
San Antonio, Texas 78205
Telephone: (210) 886-4800
Telecopier: (210) 222-7194

Eduardo Roberto Rodriguez
Texas State Bar No. 17144000
Southern District Bar No. 1944
Mitchell C. Chaney
Texas State Bar No. 04107500
Southern District Bar No. 1918
R. Patrick Rodriguez
Texas State Bar No. 24002861
Southern District Bar No. 22949
Rodriguez, Colvin & Chaney, L.L.P.
1201 East Van Buren Street
Post Office Box 2155
Brownsville, Texas 78522
Telephone: (956) 542-7441
Telecopier: (956) 541-2170

ATTORNEYS FOR DEFENDANT,
SOUTHWESTERN BELL TELEPHONE, L.P.

Respectfully submitted,

By: _____

Christopher Malish
State Bar No. 00791164
Mark Foster
State Bar No. 07293850

Foster & Malish, L.L.P.
1403 West Sixth Street
Austin, Texas 78703
(512) 476-8591/(512) 477-8657/fax

Gilberto Hinojosa
Magallanes, Hinojosa & Mancias
1713 Boca Chica Blvd.
Brownsville, Texas 78520
(956) 544-6571
(956) 544-4290

ATTORNEYS FOR PLAINTIFFS

By: _____
Javier Aguilar
State Bar No. 00936300
Southern District Bar No. 3429
Geoffrey Amsel
Attorney in Charge
State Bar No. 01161570
Southern District Bar No. 22716
Southwestern Bell Telephone, L.P.
1010 N. St. Mary's, Room 1400
San Antonio, Texas 78205
Telephone: (210) 886-4800
Telecopier: (210) 222-7194

Eduardo Roberto Rodriguez
Texas State Bar No. 17144000
Southern District Bar No. 1944
Mitchell C. Chaney
Texas State Bar No. 04107500
Southern District Bar No. 1918
R. Patrick Rodriguez
Texas State Bar No. 24002861
Southern District Bar No. 22949
Rodriguez, Colvin & Chaney, L.L.P.
1201 East Van Buren Street
Post Office Box 2155
Brownsville, Texas 78522
Telephone: (956) 542-7441
Telecopier: (956) 541-2170

ATTORNEYS FOR DEFENDANT,
SOUTHWESTERN BELL TELEPHONE, L.P.

8