IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

AUG 13 2002

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | |
|---|---|
| ACCUTEL OF TEXAS, INC. ET AL.,  § | |
| Plaintiffs, § | |
| § | |
| v. § | C.A. No. B-02-54 |
| § | |
| SOUTHWESTERN BELL TELEPHONE, L.P., § | |
| Defendant. § | |

## MEMORANDUM AND OPINION

On August 7, 2002, the Court granted Defendant's Motion to Dismiss and denied Plaintiff's Motion to Remand [Dkt. No. 24]. This opinion explains that order.

Background

Plaintiffs are Competitive Local Exchange Carriers ("CLECs"), businesses attempting to compete with Southwestern Bell in a local service area which Southwestern Bell currently dominates. Essentially, Plaintiffs are in the business of buying certain services from SWBT and then reselling those services to consumers. Plaintiffs purchased "electronic ordering" services from Defendant Southwestern Bell Telephone ("SWBT") under a "Resale Agreement" between the Parties [Dkt. No 3 Ex. B ("Agreement")]. The terms of the purchase, according to the Agreement, were established "pursuant to the Telecommunications Act of 1996."

The Federal Communications Act was passed in 1996 to break up monopolies on local phone service and to introduce competition to the local phone service market. Under the FTA, CLEC's such as Plaintiffs may buy retail services at wholesale prices from companies like Defendant Southwestern Bell ("Incumbents"), and resell them to consumers. To do this, Plaintiffs must interconnect with the incumbent's system and use some of its network elements or operating support system functions. When the incumbent seller and the CLEC buyer cannot agree on a reasonable rate for the sale of these services, FTA provides that the state regulatory body, here the Public Utility

Commission of Texas ("PUC"), sets the rate. PUC set rates in 1997 for the reselling of the services at issue here. Plaintiffs allege that they were charged over and above the PUC-set rate for these services.

Accu-tel invoked arbitration on August 22, 2001 before PUC and obtained an award on January 25, 2002, which established a schedule for the filing of comments which would be addressed by the Arbitrators before March 18, 2002 [Dkt. No. 3 Ex. A]. Accu-tel did not wait for the comments period to terminate before filing this action in state court on February 22, 2002.

Jurisdiction

Plaintiffs' Original Petition asserts causes of action for deceptive trade practices, unjust enrichment, and state anti-trust [Dkt. No. 1, attachment]. The Petition also states that "the fees charged by Southwestern Bell were *nearly ten times higher than* the rate approved by the Texas Public Utility Commission ("PUC" or "Commission"), the state agency charged with setting appropriate rates in the industry." [Dkt. No. 1 Attachment 1] (emphasis in original).

Defendants claim that a federal question is raised under the Federal Telecommunications Act, while Plaintiffs claim that the Act is only "tangentially implicated". These arguments are related, as a conclusion that the Act is implicated means necessarily that Plaintiffs have failed to exhaust their administrative remedies.

The primary question in this regard is whether the Court can resolve this dispute without interpreting the interconnection agreement under federal law. Plaintiff claims that "Plaintiffs' well-pleaded complaint shows clearly that plaintiffs are seeking to recover for damages relating to Southwestern Bell's deceptive trade practices, state anti-trust violations, and to recover money had and received, none of which raise federal questions." [Dkt. No. 8 at 5]. However, the Court agrees with the recent ruling of the Northern District of Texas, which found that interpretation of the agreement under the FTA is required. Millennium One Communications, Inc. v. Southwestern Bell Telephone, L.P., (C.A. No. 3:02-CV-0527-L) (N.D. Tx., April 16, 2002). The Court stated simply that cases such as this are governed by federal law, and that therefore

jurisdiction before PUC is proper. Id. at 4 ("The Federal Telecommunications Act § 252 governs this court's jurisdiction to review disputes that arise in relation to such agreements"). Specifically, the Court, in assuming jurisdiction over this case, would be required to determine whether the PUC-set rates were exceeded in this case-- the very thing that the FTA gives PUC the authority to decide. Plaintiffs' Original Petition essentially asks the court to do just that. Moreover, in this case, Plaintiff Accu-Tel, not Defendant, invoked the FTA by petitioning for arbitration before PUC in this matter [Dkt. No. 3 Ex. A Item 1]. The Court agrees that PUC "proceedings are essential to this lawsuit; if SWBT is charging the correct rate, then Accu-Tel has no damages." [Dkt. No. 14 at 2].

Plaintiffs have failed to exhaust their administrative remedies, and primary jurisdiction rests with PUC. Because the PUC proceedings are at the heart of this litigation, the case must proceed before PUC before it can proceed before a federal district court. Southwestern Bell Tel. Co. v. Public Util. Comm., 208 F.3d 475, 479 (5th Cir. 2000). Only after a determination by that body can a federal Court have jurisdiction over the case. The FTA provides that "[i]n any case in which a State commission makes a determination under this section, any party aggrieved by such determination may bring an action in an appropriate federal district court to determine whether the [interconnection] agreement . . . meets the requirements of [47 U.S.C. §§251 & 252]." 47 U.S.C. §252(e)(6) (1996).

For the foregoing reasons, the Court has no jurisdiction to hear this case and it remains **DISMISSED** without prejudice.

DONE this ___13___ of August, 2002, at Brownsville, Texas.

Hilda G. Tagle
United States District Judge