IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

APR 0 1 2003

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | | |
|---|---|---|
| ACCUTEL OF TEXAS, INC. ET AL., | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | C.A. No. B-02-54 |
| | § | |
| SOUTHWESTERN BELL TELEPHONE, L.P., | § | |
| Defendant. | § | |

## ORDER

BE IT REMEMBERED that on March 31, 2003, the Court **GRANTED** Plaintiffs' Motion for Reconsideration [Dkt. No. 27] and **REMANDED** the case to the 107th Judicial District Court of Cameron County, Texas.

### I. Procedural and Factual Background

Plaintiffs are Competitive Local Exchange Carriers ("CLECs"), businesses attempting to compete with Southwestern Bell Telephone ("SWBT") in a local service area that Southwestern Bell currently dominates. Essentially, Plaintiffs are in the business of buying certain services from SWBT and then reselling those services to consumers. Plaintiffs purchased "electronic ordering" services from Defendant SWBT under a "Resale Agreement" between the Parties [Dkt. No 3 Ex. B ("Agreement")]. The terms of the purchase, according to the Agreement, were established "pursuant to the Telecommunications Act of 1996."

The Federal Telecommunications Act ("FTA") was passed in 1996 to break up monopolies on local phone service and to introduce competition to the local phone service market. See 47 U.S.C. §§ 251 et. seq. Under the FTA, CLECs may buy retail services at wholesale prices from companies like Defendant Southwestern Bell ("Incumbents"), and resell them to consumers. To do this, Plaintiffs must interconnect with the incumbent's system and use some of its network elements or operating support system functions. When the incumbent seller and the CLEC buyer cannot agree on a

reasonable rate for the sale of these services, the FTA provides that the state regulatory body, in this case the Public Utility Commission of Texas ("PUC"), sets the rate. The PUC set rates in 1997 for the reselling of the services at issue here. Plaintiffs allege that they were charged over and above the PUC-set rate for these services.

AccuTel invoked arbitration on August 22, 2001, before the PUC and obtained an award on January 25, 2002, which established a schedule for the filing of comments. These comments were scheduled to be addressed by the Arbitrators before March 18, 2002 [Dkt. No. 3, Ex. A]. AccuTel filed this action in state court on February 22, 2002, before the comment period had expired. On June 17, 2002, SWBT filed a complaint in the United States District Court for the Western District of Texas and sought review of the PUC's determinations in this case concerning the pricing under federal law for AccuTel's electronically submitted resale new-connect orders. See SWBT's Notice to the Court, Ex. A [Dkt. No. 16].

## II. Standard for Motion for Reconsideration

The Federal Rules of Civil Procedure do not recognize a Motion for Reconsideration per se. See Lavespere v. Niagara Mach. & Tool Works, Inc., 910 F.2d 167, 173 (5th Cir. 1990), abrogated on other grounds, Little v. Liquid Air Corp., 37 F.3d 1069, 1075 n.14 (5th Cir. 1994) (en banc). AccuTel filed its Motion for Reconsideration, as computed under Federal Rule of Civil Procedure 6(a), within ten (10) days after the Court entered its memorandum and opinion on August 13, 2002. The Court, therefore, considers the Motion as one to "alter or amend the judgment" under Federal Rule of Civil Procedure 59(e). See id. See also Fletcher v. Appel, 210 F.3d 510, 512 (5th Cir. 2000).

Motions for Reconsideration are generally disfavored and are not proper tools "to introduce evidence that was available at [the time of the summary judgment motion] but was not proffered, to relitigate old issues, to advance new theories, or to secure a rehearing on the merits." Fontenot v. Mesa Petroleum Co., 791 F.2d 1207, 1219 (5th Cir. 1986). Generally, a Motion for Reconsideration may be granted under Rule 59(e) if the movant shows: "(1) the motion is necessary to correct a manifest error of fact or

law; (2) the movant presents newly discovered or previously unavailable evidence; (3) the motion is necessary in order to prevent manifest injustice; or (4) the motion is justified by an intervening change in the controlling law." Fields v. Pool Offshore, 1998 WL 43217, *2 (E.D. La. Feb. 3, 1998), aff'd 182 F.3d 353 (5th Cir. 1999). The Court GRANTS Plaintiff's Motion in order to correct an error of law.

### III. Reconsideration of the Order of Dismissal

Plaintiffs' Original Petition asserts causes of action for deceptive trade practices, unjust enrichment, and state anti-trust claims [Dkt. No. 1, attachment]. The Petition also states that "the fees charged by Southwestern Bell were *nearly ten times higher than* the rate approved by the Texas Public Utility Commission ("PUC" or "Commission"), the state agency charged with setting appropriate rates in the industry." [Dkt. No. 1, Attachment 1] (emphasis in original).

Defendant claims that a federal question is raised under the Federal Telecommunications Act, while Plaintiffs claim that the Act is only "tangentially implicated." The primary question for this Court is whether it can resolve this dispute without interpreting the interconnection agreement under federal law. Plaintiffs claims that "Plaintiffs' well-pleaded complaint shows clearly that plaintiffs are seeking to recover for damages relating to Southwestern Bell's deceptive trade practices, state anti-trust violations, and to recover money damages, none of which raise federal questions." [Dkt. No. 8, at 5].

In their Motion for Reconsideration, Plaintiffs argue the Court erred in dismissing its claim because it misapplied the holding in Millennium One Communications, Inc. v. Southwestern Bell Telephone, L.P., (C.A. No. 3:02-CV-0527-L) (N.D. Tx., April 16, 2002). More specifically, Plaintiffs argue the PUC has no jurisdiction to consider Plaintiffs' state law claims.

In Millennium One Communications, Inc. v. Southwestern Bell Telephone, L.P., (C.A. No. 3:02-CV-0527-L) (N.D. Tx., April 16, 2002), the district court determined the parties' dispute concerned whether one party was being overcharged for certain services pursuant to an interconnection agreement governed by section 252 of the

Federal Telecommunications Act. See id. at 4 ("The Federal Telecommunications Act § 252 governs this court's jurisdiction to review disputes that arise in relation to such agreements"). The court further held that because resolution of the dispute necessarily required interpretation of the agreement, the parties must first exhaust their administrative remedies before the PUC. See id. at 5. The district court, therefore, had appellate jurisdiction to review the PUC's determination. See 47 U.S.C. § 252(e)(6). In Millennium One Communications, the claim before the court consisted exclusively of a dispute concerning whether the defendant was overcharging for certain electronic services, and no state law claims were at issue.

      The doctrine of primary jurisdiction enables a trial court to utilize the expertise and uniformity of an administrative agency's determinations. The court may then use the PUC's, or another applicable agency's, determination as a basis for its own determinations in state tort claims. See Penny v. Southwestern Bell Telephone Co., 906 F.2d 183, 187 (5th Cir. 1990). The PUC does not have exclusive jurisdiction over state tort claims including Plaintiffs' claim under the Texas Deceptive Trade Practices Act ("DTPA") and state antitrust claims. See, e.g., Dolenz v. Southwestern Bell Tel. Co., 730 S.W.2d 44 (Tex. App. –Houston [14th Dist.] 1987, no writ). As a result, the exhaustion of remedies doctrine does not apply because it only arises when a court has *only* appellate, and not original jurisdiction to review an agency's decision. See Southwestern Bel Tel. V. P.U.C. of Texas, 735 S.W.2d 663, 669 n.3 (Tex. App. –Austin 1987, no writ).

      In the present case, Plaintiffs do not request the court to adjudicate the proper rates under the PUC. Rather, Plaintiffs request the court to determine whether the PUC-set rates were exceeded in this case, which in turn would allegedly give rise to their state law claims. The PUC has jurisdiction not only to set the rates at issue in this case, but also to determine whether parties have complied with such rates. See Southwestern Bell Tel. Co. v. Public Util. Comm., 208 F.3d 475, 479 (5th Cir. 2000). The PUC has expertise and can offer uniformity in determinations concerning the charging of rates, which would aid in the adjudication of this case. For this reason, the doctrine of primary jurisdiction applies, and this court should generally hold such cases

in abeyance pending the outcome of the PUC's determination. See Penny, 906 F.2d at 185.

The Court agrees with Defendant that the PUC proceedings are important to this lawsuit because if SWBT is charging the correct rate, AccuTel will not recover under the state claims. [Dkt. No. 14 at 2]. Therefore, rather than dismiss this case, the Court should have held it in abeyance pending an outcome in the proceedings before the PUC. In the same order of dismissal under reconsideration now, the Court also denied Plaintiff's Motion to Remand [Dkt. No. 8], which was pending at the time the Court dismissed Plaintiff's claims. In reconsidering this order of dismissal, the court also reconsiders the denial of Plaintiffs' Motion to Remand.

### IV. Reconsideration of the Denial of Plaintiffs' Motion for Remand

Defendant removed this case to federal court pursuant to 28 U.S.C. § 1441(b), which allows removal of actions when "the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States." Defendant contends that Plaintiffs' claim is a request for adjudication of the proper rates under the FTA, which it argues would trigger federal question jurisdiction. As Plaintiffs point out, however, the PUC has already previously adjudicated the proper rates in this case, and thus Plaintiffs' claims arise exclusively under state law.

The Supreme Court has stated that the presence of a federal issue in a state cause of action does not automatically confer federal question jurisdiction. See Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. 804, 813 (1986) (footnote omitted). In this case, there is no substantial, disputed question of federal law that is a necessary element of the state claims. See Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 13 (1983). In addition, no *resolution* of a substantial question of federal law is necessary for adjudication of the state claims. Rather, the case simply requires the court to apply the determination of the PUC concerning the charging of certain service rates. Indeed, there are numerous state courts that have entertained similar law suits. See, e.g., Penny, 906 F.2d at 186 (citing Texas court cases that exercised their jurisdiction over state claims and have held the PUC does not have exclusive

jurisdiction over tort claims). Without a federal question, this Court does not have original jurisdiction over a federal claim and hence supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367(a).

The Court **GRANTS** Plaintiffs' Motion for Reconsideration, and **REMANDS** the case to the 107th Judicial District Court of Cameron County, Texas.

DONE this 31st of March, 2003, at Brownsville, Texas.

Hilda G. Tagle
United States District Judge